UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00194-LLK

KASSIE JO LANE                                                                                         PLAINTIFF

v.

ANDREW SAUL, Acting Commissioner of Social Security                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Docket Number ("DN") 14 and 15. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 8].

Plaintiff's primary argument is that the decision of the Administrative Law Judge ("ALJ") does not give good reasons for the weight given to the medical opinion of her treating neurologist. Because the argument is persuasive, the Court will REMAND this matter to the Commissioner for a new decision.

**The ALJ's decision does not give good reasons
for the weight given to the medical opinion of Plaintiff's treating neurologist.**

Plaintiff argues that the ALJ's decision does not give good reasons for the weight given to the medical opinion of her treating neurologist. [DN 14 at 9-11].

In November 2017, Plaintiff's treating neurologist, William Hogancamp, M.D., completed a standard physical assessment form. [DN 7-9 at 1166]. Among other things, Dr. Hogancamp found that Plaintiff's multiple sclerosis ("MS") limits her to sitting, standing, and walking no more than 4 hours total in an 8-hour workday. *Id.* Additionally, in an 8-hour workday, she would frequently need to rest, recline, or lie down to alleviate pain, fatigue, or other symptoms. *Id.* She can only rarely use her hands for

1

repetitive actions such as reaching, handling, and fingering. *Id.* Her MS symptoms and treatment would likely result in routine absences from work 4 or more days a month. *Id.*

Any one or all of these findings, if accepted, would preclude performance of any full-time work and render Plaintiff disabled. As the treating neurologist, Dr. Hogancamp's opinion was informed by MRI evidence showing the degree of demyelination of Plaintiff's brain and spinal cord and the neurological examination results, which showed, among other things, abnormal tandem walking coordination and decreased sensation in the lower extremities bilaterally.

Consistently with Dr. Hogancamp's findings, Plaintiff testified that that she suffers from "daily struggles … with fatigue," needs "at least 12 breaks in a day," "balance … progressively worse," falls "at least five or six times … in the past four months," nerve pain ("feels like my skin is crawling at nighttime"), spasticity, insomnia ("I can't actually sleep because I can't make my body be still"), restless leg syndrome (spasms and jerking after an hour of sitting), and "hard time with just my fingers, making them work." [DN 7-2 at 47-51, 59-60].

In stark contrast to Dr. Hogancamp's findings and Plaintiff's testimony, the ALJ found that Plaintiff has a residual functional capacity ("RFC") to perform light work. [DN 7-2 at 21]. Light work requires a good ability to stand/walk and good use of the upper extremities. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. Unskilled, light jobs generally require gross use of the arms and hands to grasp, hold, and turn objects (but do not require fine use of the fingers, which is associated with sedentary work). *Id.* at *6; SSR 83-14, 1983 WL 31254, at *4. Additionally, the ALJ found that Plaintiff can frequently climb ramps and stairs, balance, kneel, stoop, crouch, crawl, handle, finger, and feel bilaterally with the upper extremities. [DN 7-2 at 21].

A treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). Even if it is not entitled to controlling weight, a treating physician's medical opinion may be entitled to greater weight than any other opinion in the record. Hence, when (as here), an ALJ does not give the treating physician's medical opinion controlling weight, the ALJ must give good reasons for the weight given the opinion in light of several regulatory factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ is required to "always give good reasons in [the] notice of determination or decision for the weight" given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). These reasons must be specific in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

The ALJ's decision does not give good reasons for finding that Plaintiff can stand/walk 6 hours per 8-hour workday as required to perform light work and can frequently climb ramps and stairs, balance, kneel, stoop, crouch, crawl, handle, finger, and feel bilaterally with the upper extremities, [DN 7-2 at 21], notwithstanding Dr. Hogancamp's opinion and Plaintiff's testimony, which would preclude these activities. The ALJ merely concluded that Dr. Hogancamp's opinion is entitled to "partial weight," [DN 7-2 at 26], because the objective medical evidence does not "fully support" his opinion:

> The objective medical evidence largely shows stable normal functioning upon neurological examinations save for abnormal tandem walking coordination and decreased sensation in the lower extremities bilaterally secondary to her multiple sclerosis. Her facial movements were symmetrical and normal, and her speech was precise. Her extremity strength was normal in both uppers and lowers. Her deep tendon reflexes were intact and symmetrical, and her rapid

alternating movements were unimpaired. She performed finger-to-nose testing well, without dysmetria. Her gait was normal. Examination of the extremities revealed normal findings.

[DN 7-2 at 26]. "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 at *2. The ALJ did not mention or analyze the factors set forth at 20 C.F.R. § 404.1527(c)(2)-(6).

As a neurologist, Dr. Hogancamp was in the position to offer the best estimation of Plaintiff's functional limitations based on the degree of demyelination of Plaintiff's brain and spinal cord and neurological examination results. The ALJ merely identified select findings and characterized them as "stable," "normal," and "symmetrical." As in *Hargett v. Comm'r of Soc. Sec.*, the ALJ gave "partial weight" to the treating physician's medical opinion, with no "effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." 964 F.3d 546, 552 (6th Cir. 2020).

**Upon remand, the ALJ should also reconsider the severity of Plaintiff's mental impairments.**

The ALJ found that Plaintiff's "medically determinable mental impairments of generalized anxiety considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." [DN 7-2 at 18]. Plaintiff's argues that the ALJ did not give good reasons in support of this finding. [DN 14 at 2].

Plaintiff takes Prozac (fluoxetine) for depression and premenstrual dysphoric disorder ("PMDD"). [DN 7-2 at 18, 39, 53]. Additionally, she testified that she suffers from mental impairments related to her MS, including cognitive decline, "brain fog," "not being able to remember or hold on conversations or remember people and their words," "I can't remember anything unless I write it down," problems staying on task, and depression, anxiety, and anger related to these issues. [DN 7-2 at 46-47, 60].

In June 2016, Plaintiff was examined at the request of the Commissioner by licensed clinical psychologist Sarah P. Kerrick, Psy.D., who offered a Mental Status Evaluation Report. [DN 7-8 at 871-76].

4

Plaintiff told Dr. Kerrick that her PMDD had "ruined several relationships" and that she had suicidal thoughts after she received her MS diagnosis, but she started praying and felt she got confirmation that she should be alive.  *Id.* at 872.  Dr. Kerrick diagnosed generalized anxiety disorder, PMDD (by history), and situational specific phobia (avoidance of driving due to eye impairment / Coats' disease), and found, among other things, that Plaintiff would be markedly limited in her ability to tolerate stress and pressure of day-to-day employment.  *Id.* at 875.

Because Plaintiff's mental impairments are intertwined with her MS and this opinion has already concluded that a remand is required for the ALJ to reconsider the severity of Plaintiff's MS (in light of the treating neurologist's medical opinion), there is no valid reason why, upon remand, the ALJ should not also reconsider the severity of Plaintiff's mental impairments.[1]

### Order

Therefore, this matter is hereby REMANDED to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

September 29, 2020

Lanny King, Magistrate Judge
United States District Court

---

[1] At age 8, Plaintiff got a virus in her left optic nerve, and she suffers from Coats' disease.  [DN 14 at 2].  There is no indication Plaintiff's Coats' disease is related to her MS.  Coats' disease is a disease of the retinal blood vessels, which can be quite variable in its effect on vision.  *Burke v. Miami-Dade Cty.*, No. 16-25190-CIV, 2017 WL 4119625, at *1 (S.D. Fla. Sept. 18, 2017).  Many patients with Coats' disease have minimal visual problems but, in some individuals, it can cause severe retinal damage leading to blindness.  *Id.*  Plaintiff has 20/20 vision in her right eye and vision in her left eye that fluctuates between 20/200 and 20/60.  [DN 7-2 at 25].  The ALJ found that Plaintiff "cannot have exposure to unprotected heights or hazards such as moving machinery [and] must avoid driving at night [and] should not be required to use her peripheral vision on the left."  [DN 7-2 at 22].  Plaintiff's argument that the ALJ erred in evaluating her Coats' disease is unpersuasive because she identifies no evidence, which the ALJ was required to accept, of an additional, vocationally significant visual limitation.